Filed 12/2/21  In re Ruby R. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION EIGHT

| | |
|---|---|
| In re RUBY R., a Person Coming Under the Juvenile Court Law. | B309614 |
| _____ LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | Los Angeles County Super. Ct. No. 20CCJP00143B |
| Plaintiff and Respondent, | |
| v. | |
| M.M., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Lisa A. Brackelmanns, Commissioner. Affirmed.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Peter Ferrera, Principal Deputy County Counsel, for Plaintiff and Respondent.

––––––––––––––––––––

A father appeals from the juvenile court's dispositional order regarding his daughter. We affirm. Undesignated statutory references are to the Welfare and Institutions Code.

I

We recount the relevant factual and procedural background.

A

The father has one daughter with the mother. The daughter, Ruby, is 14. When the father and mother began their relationship, the mother already had a daughter from a previous relationship, Sarai. Sarai is 18. The father acted as a father-figure to Sarai, who did not discover he was not her biological father for many years. The father and mother separated when Ruby was around eight or nine.

Sarai had a strained relationship with her mother. In June 2019, she began living with relatives. In November 2019, while living with her aunt, she witnessed a domestic violence incident between the aunt and the aunt's boyfriend. The Los Angeles County Department of Children and Family Services learned of this event and a social worker interviewed Sarai. Sarai said she had a strained relationship with her mother who made negative and belittling comments to her. Sarai had attempted suicide by hanging when she was in fifth grade and by overdosing on pills when she was 15. Sarai also said she had been sexually assaulted by the father when they all lived together, but she did not recall details because it happened when she was young.

2

Sarai claimed she told her therapist about the abuse a few months earlier, but the therapist said this was not so. The therapist then discussed the abuse with Sarai and said it was the missing piece of the puzzle that made more sense of Sarai's recent behavior.

The police spoke with Sarai about the sexual abuse a few days later. Sarai described two incidents. When she was six, the father had told her to come into his room and lay on the bed with him. He climbed on top of her and touched her chest and vagina. When Sarai was 12, the father pinned her to the floor and laid on top of her. He eventually let her go, and she ran to a relative's apartment. Sarai repeated her account of these two events during a later forensic interview. During the later interview, Sarai recalled that the father had told her to take off her clothes except her underwear and that the father had also touched her behind.

A social worker spoke to Ruby. Ruby had been living with her father for the past year, but she had recently returned to live with her mother. Ruby reported the father had not abused her or acted inappropriately. Ruby had been sexually abused several years earlier by an uncle who continued to live in the same apartment complex as the mother.

The father denied he ever sexually abused Sarai. He said Sarai was lying and he was hurt she would say something like that.

The Department removed the children from the mother and the father and placed them in foster care together. The juvenile court detained the children and continued their placement in foster care.

The father attended nine individual therapy sessions and missed 11 before his treatment was terminated for excessive absences. The therapist reported the father denied the sexual abuse and was defensive about the topic, although he was open to exploring the issues that led to the Department's involvement.

The father had monitored visits with Ruby and spoke with her on the phone. When interviewed before the adjudication hearing, Ruby reported the visits were great and her communication with her father had greatly improved. Ruby wanted to return to either her mother or her father's care.

## B

At the adjudication hearing, the mother pleaded no contest, and the juvenile court sustained an amended allegation under section 300, subdivision (c), finding that the mother had emotionally abused Sarai. After reviewing the evidence and hearing argument, the juvenile court sustained allegations under subdivisions (d) and (j) against the father, finding that he had sexually abused Sarai and that this conduct placed Ruby at risk. At disposition, the juvenile court removed Sarai from the mother and Ruby from the mother and the father. The court ordered the father to take parenting classes and to engage in individual counseling and sexual abuse counseling for perpetrators. The court ordered the father's visits with Ruby continue to be monitored.

The father appealed the juvenile court's order. The father limits his challenge to the dispositional portion of the order, conceding that the juvenile court's finding that Sarai was credible constitutes sufficient evidence for the jurisdictional order.

## II

The father challenges the juvenile court's removal of Ruby from his care and the order that his visits be monitored.

## A

The father argues substantial evidence did not support the juvenile court's finding that Ruby needed to be removed from his care. This argument is incorrect.

Our inquiry is whether the record contains substantial evidence from which a reasonable fact finder could conclude it is highly probable a fact is true. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011–1012.)

The father argues there was no evidence Ruby would be at risk in his care. He says there is no evidence he ever directly harmed or engaged in inappropriate behavior with her. Rather, he asserts the evidence shows his conduct has always been appropriate. He points out that Ruby denied any inappropriate conduct by the father and that she felt safe and wanted to return to his care.

That the father has not yet acted inappropriately with Ruby is no guarantee he will not. The court is not required to wait until harm occurs to act to protect a child. (§ 361, subd. (c)(1) & (4); *In re I.J.* (2013) 56 Cal.4th 766, 773.) The juvenile court appropriately considered the father's continuing denial that he abused Sarai. The court also took into account the father's lack of progress in addressing the abuse. The therapist terminated father's therapy for excessive absences. When he did attend, he denied the abuse and became defensive when asked about it. These signs are bad. They are substantial evidence.

In determining the risk to a child, the court can properly consider the gravity of the possible harm. (*In re S.R.* (2020) 48

5

Cal.App.5th 204, 223–224 (*S.R.*).) Where the harm is serious, a lessened probability of harm supports removal. (*Id.* at p. 224.) The father tries to downplay the risk by emphasizing that Ruby was not present during the abuse, no other family members have alleged abuse, and that the last incident was several years ago. But the harm involved here, sexual abuse by a parent, is particularly grave. Even if the father's conduct has been limited to the incidents Sarai disclosed, that history represents a serious threat to Ruby. The risk is heightened by the fact that Ruby is around the age Sarai was at the time of the father's second assault.

The father minimizes Ruby's particular vulnerability based on the uncle's past sexual abuse of Ruby, pointing to her statement that she is comfortable living in the same complex as the uncle. This argument is fallacious. Living in the same apartment complex cannot be compared to suffering further sexual abuse, the risk involved here. And Ruby has since stated she does not want to return to her mother's apartment in that complex. The gravity of the harm coupled with the father's failure to address the issue supported the juvenile court's conclusion that the risk to Ruby required her removal from the father.

The father tries to distinguish this case from *S.R.*, *supra*, 48 Cal.App.5th 204. He notes the father in that case was found in possession of child pornography at the time of the case, where the father's conduct here was years before and apparently an isolated event. *S.R.* indeed is quite different from this case: unlike the father in that case, who had no physical contact with a child (*id.* at p. 224), the father here has already sexually abused a young girl who considered him a father. *S.R.* does not show the

father, who engaged in more aberrant and serious behavior than the conduct in *S.R.*, can safely have custody of Ruby.

The father also argues removal was improper because alternative measures existed to protect Ruby in his custody, such as unannounced visits and in-home services. The father also claims it is especially improbable he would do anything while under the Department's microscope. The harm here, however, was particularly great. Unannounced visits cannot eliminate the risk.

B

The father argues the juvenile court abused its discretion in ordering his visits with Ruby be monitored. This argument is in error.

We review the juvenile court's visitation orders for abuse of discretion. (*In re D.P.* (2020) 44 Cal.App.5th 1058, 1070.)

The father largely repeats the arguments he made about removal, emphasizing he had attended individual therapy sessions, he had positive visits with Ruby, and Ruby denied any abuse and expressed wanting to return to his care. For reasons we already have canvassed, these facts do not negate the risk to Ruby represented by the type of harm involved and the father's failure to address the issue. The juvenile court did not abuse its discretion in ordering the father's visits be monitored.

## DISPOSITION

We affirm.

WILEY, J.

We concur:


GRIMES, Acting P. J.


HARUTUNIAN, J.[*]

---

[*] Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.